Peck, J.
The only points relied on for the reversal of the judg *303 ment in this case, are : 1. The improper exclusion, *by the court below, of testimony offered by the plaintiff in error; 2. That the original note, of which the note sued is a mere renewal, was in law paid, and consequently that the note in suit was without any consideration to support it; 3. That even if the note in suit was, at its inception, a valid note, it having been retained by the payees until alter its maturity, should have been treated and regarded by the court below as paid off and discharged.
1. Did the court below err in excluding the testimony offered by plaintiff in error?
The object of the plaintiff in error was to show that the assignees acquired no title to the note by its transfer to them, and could confer none on their assignee, who received it merely for collection. The 29th section of the act relating to bank commissioners, etc., in Swan’s Statutes of 1841, page 133, reads as follows:
“ It shall be unlawful for any banking institution, or any company or society exercising banking powers in this state, to make an assignment or transfer of any of ;ts real estate or personal property, or any of its rights, credits, moneys, or effects whatsoever, with intent to hinder or prevent such institution, company, or society from being closed up by the bank commissioners, under this act, or the act to which this is an amendment, or for the purpose of avoiding any of the provisions of said act; but all such institutions, companies, or societies, shall be subject to the operation and j>rovisions of said acts, notwithstanding such assignment or transfer; and all assignments and transfers with intent, or for the purpose aforesaid, shall bo held absolutely void as against the operations and provisions of said act.”
' The statutes of 1839 and 1840, creating a board of bank commissioners, and authorizing them, under certain circumstances, to close up the business and distribute the assets of banking institutions among the creditors, were ^enacted for the safety and protection of the public; and the 29th section, above quoted, was especially required to render effective the salutary provisions of those statutes. As a general rule, it is undoubtedly true, that where a statute, designed for the protection of the public, prohibits in express terms the making of a contract, such contract is absolutely void, whether the thing contracted for is malum in se, or merely malum prohibitum.
But where the law which prohibits the contract, at the same *304 time also limits the effect, or declares the consequences which shall attach to the making of it, the general rule does not apply.
The 29th section declares all assignments made by banking institutions, with intent to prevent the interference of the commissioners, unlawful; and if this were all, the general rule might possibly be applied; but in the latter part of the section, the legislature has seen fit to declare what consequences shall follow the making of such an assignment, by the words: “ But all such institutions, companies, .or societies, shall be subject to the operations and provisions of said acts, notwithstanding such assignments or transfers; and all assignments or transfers, with intent or for the purpose aforesaid, shall be held absolutely void as against the operation and provisions of said acts.” The statute, then, does not stop with the prohibition, and leave the courts to adjudge the assignment void for all purposes, as a thing prohibited for the protection of the public, but provides that the institution shall still be subject to the operation of the law, and then declares that the assignment “ shall be held absolutely void as against the operations and provisions of said act.” In other words, if the exigency should arise, the bank commissioner’s may take possession of, collect and distribute the assets, as if no such assignment had been made.
The intention is manifest. The assignment was to present no obstacle to the interference of the commissioners. As against them, it was to be void, if they had cause to, *and did interfere; but not void as to others, unless the commissioners, in the discharge of their duties, should vacate and annul it.
The mere fact that the bank had made the assignment, with the intent specified years before, but which was not followed by any action of the board of bank commissioners, would not vacate or annul the assignment to McCleary and others; and proof of it was very properly excluded by the court. Its introduction could not, in law, have availed the plaintiff in error, and its exclusion has not, in law, injured him.
Did the court below err in finding upon the facts; proved and admitted, that the note sued on was valid and subsisting, as against plaintiff in error ?
It is claimed that the original note delivered to the assignees (McCleary being one of the makers), on its maturity in their hands, became and was assets in the hands of McCleary, though not, in fact, paid; and that its subsequent surrender was not, in law, a *305 sufficient consideration to support the note sued on. It is also insisted, that even if the note sued on was valid at its inception, still, on its maturity in their hands, it, in law, 'became assets in the hands of McOleary, and should have been regarded by the court as paid.
These results are claimed on the authority of the case of Bigelow v. Bigelow., 4 Ohio, 138, which, on principle, is not distinguishable, it is said, from the case at bar. In that case, a debtor of an intestate had been appointed administrator; whereby the right to sue and the obli•gation to pay centered in one and the same person ; and it was held that, inasmuch as the administrator could not sue himself and thereby collect the debt, it became assets in his hands; and the court intimate that the rule should be applied to trustees generally. The court say the debt was not thereby extinguished; but it was a “quasi” release at law, because the administrator could not sue himself, and a personal action, once suspended, is always suspended. • *The authority of this case is somewhat shaken, and its practieal application limited, in the subsequent cases of Hall v. Pratt, 5 Ohio, 72, and Miller v. Donaldson, 17 Ohio, 265. In Hall v. Pratt, Wright, J., dissents from much of the reasoning, and especially questions the universality of the maxim, that personal actions once suspended are always suspended; while in Miller v. Donaldson, Avery, J., remarks, that the holding a debt in such case to be assets in the hands of an administrator, is a mere fiction of law which can' not be allowed to work injustice. In that case, a mortgagor who had been qualified and had acted as executor of the mortgagee, had failed to pay the debt while in office, and the court permitted a foreclosure of the mortgage after his removal, at the suit of an administrator de bonis non; thus showing, clearly, that the debt was not discharged by his appointment to and acceptance of the trust, and was not, in equity at least, to be regarded as paid. It is not pretended that either the original note or the renewed note was-ever in fact paid to the bank or its assignees; and to hold it paid under this fiction of law, would work injustice toward the bank and its creditors. The case of Bigelow v. Bigelow, is plainly distinguishable from the case at bar in this: The debt duo to the estate, in, that case, was the sole debt of the administrator, and was held to be assets in his hands, because he could not sue himself, and the estate would therefore lose it unless the fiction were resorted to; while in. the case at bar, the note is not the sole promise of McClear/, nor the. *306 joint obligation of himself and Rossman, requiring all the makers to be joined in a suit upon it; but is the joint and several note of McCleary, and Johnson, and Rossman. McCleary could not sue himself and the other makers, but he and his co-assignees could, at any and all-times, have sued the other party to the note. The necessity, therefore, did not arise for resorting to and applying this legal fiction. This proposition is too plain to require the citation of author- ■ ities to support it, *as the mere statement carries conviction to every legal mind. “Where two or more are bound jointly and severally, and one of them makes the obligee his executor, the obligee may, notwithstanding, maintain an action against the other obligor. Bradford et al. v. Williams, 4 How. (U. S.) 576; Cook v. Cross, 2 Levinz. 73; 5 Bac. Abr. 816, Tit. Oblig. D. 4. These authorities, if authorities are required for so obvious a proposition, establish that an action may be sustained by the payees of a joint and several note or obligation against one of the makers, and that it is no objection to a recovery that one of the makers, who is not sued, is a .a plaintiff in the cause. But it is said, inasmuch as Rossman, inter ■partes, is the surety for McCleary & Johnson, who would in law be .’bound to reimburse him the money he is compelled to pay, that 3£eCleary, as one of the assignees, should not be permitted to remover money from him, upon the recovery of which he (McCleary) ■would be forthwith bound to refund. It is true, that if McCleary 'had the sole beneficial interest in the money when recovered, the Jaw, whieh discountenances circuity of action, would exempt Ross-man from liability upon the note. But in the case at bar, the ■money, when collected, belongs to the three assignees, in trust for ■.the bank .and its creditors, and not to McCleary in his own right. The.-assignees were not bound, nor was McCleary as assignee, bound to-reimburse Rossman. As between Rossman and the assignees of the bank, he by his contract had bound himself severally to pay, if required, and could not have claimed exemption if sued by them at any time after the maturity of the note. Hampton v. Shehan, 7 Ala. 297; Webster v. Randall, 19 Pick. 13.
It is hardly necessary to notice the objection that there was no legal consideration for the note sued on. We hold that the note ,for the renewal of which it was given, was, at the time of the reinewal, a valid and .subsisting note, and was therefore a sufficient consideration for ithe ¿renewal. A moral obligation, arising out of a *307 pre-existing liability *which had been discharged by a mere fiction of law, would of itself support the promise.
The long period during which the note remained in the hands of the assignees after its maturity, without any effort on their part to collect it, and the solvency of the principals for several years after the note became due, and their subsequent insolvency, were circumstances proper for the consideration of a court or jury, as raising a presumption of payment. The court doubtless did so consider them in trying the issues submitted. They are not, however, so significant and conclusive, that a reviewing court would be warranted in acting upon them.

Judgment affirmed.

Brinicerhoer, C. J., and Sutlife and Gholson, JJ., concurred.
Scott, J., having formerly been of counsel, did not sit in this case.